GUSTAF A. BLID, APPELLEE, V. CHICAGO & NORTHWESTERN
RAILWAY COMPANY, APPELLANT.

FILED JUNE 26, 1911. No. 16,505.

1. **Evidence:** DIRECT AND CIRCUMSTANTIAL. The competent relevant
    testimony of unimpeached witnesses should not be held to be
    contradicted by inferences from circumstantial evidence, unless
    those circumstances and the natural inferences to be deduced
    therefrom cannot in reason be reconciled with the conclusion
    that the direct evidence is true.
2. ――――. The evidence in this case is commented upon in the opin-
    ion, and *held* insufficient to sustain the verdict of the jury.

APPEAL from the district court for Dawes county:
JAMES J. HARRINGTON, JUDGE. *Reversed.*

*B. T. White, C. C. Wright* and *B. H. Dunham* for ap-
pellant.

*J. E. Porter, contra.*
47

ROOT, J.

This is an action to recover damages for the death of live stock caused, as alleged, by the defendant's failure to maintain lawful cattle-guards at a highway crossing. The plaintiff prevailed, and the defendant appeals.

The sole question for our determination is whether the evidence sustains the verdict.

At the point where the cattle were killed, the course of the highway is north and south and that of the railway is approximately east and west. The cattle were killed by an east-bound stock train about 11 o'clock A. M., November 15, 1907. The evidence adduced by the plaintiff to sustain his allegation that his cattle went upon the defendant's right of way because of insufficient cattle-guards may fairly be summarized as follows:

Early in the forenoon the cattle were confined in a pasture from whence they subsequently escaped into the highway. The defendant's fences were in good repair, but the cattle-guards were insufficient to turn live stock. In the afternoon the plaintiff, in company with a Mr. Canfield, went to the scene of the accident, found the carcass of the bull about 60 feet east of the crossing at the bottom of the six-foot fill upon which the railway is laid, and found the carcass of the cow several feet further eastward at the bottom of and on the other side of the grade; 150 feet further eastward a crippled calf was found. For six to ten feet westward from the points where the carcasses lay, the witness found evidence that the bodies of the animals had been pushed or had slipped over the rails and the ties.

The defendant produced the fireman and the engineer in charge of the train, and they testify positively that, as the locomotive emerged from a cut at the end of a curve, the cow, the bull and the calf were standing in the highway on the planks between the rails; that the stock alarm was sounded, and, so soon as it was evident that the cattle did not intend to move, the air brakes were applied, so

that the speed of the train was decreased to 15 or 18 miles an hour as it passed over the crossing, but that it was impossible to stop the train and avoid a collision with the cattle, which occurred either right at the traveled way or between it and the cattle-guards; that the bodies of the cattle were carried on the pilot over the cattle-guard and beyond for a space until they rolled or fell off of the engine. The engineer testified that in his experience bodies of cattle have been thus carried for 100 yards before they would become disentangled and fall from the pilot. Two other witnesses testified that there were no cattle tracks on the railway grade east, but that there were such tracks on the highway between the rails west, of the cattle-guards; that hair was found upon the cattle-guards and occasionally from thence eastward to the point where the carcasses were found, but no blood stains were observed along the route.

The plaintiff in rebuttal produced a witness who testified, in substance, that he was familiar with the operation of railway trains, and on three different occasions witnessed collisions between locomotive engines and live stock, and that from his experience he did not believe that the cow, the calf and the bull could have been carried upon the defendant's locomotive engine as testified to by the fireman and the engineer.

The plaintiff contends that, although the sole eye-witnesses to the transaction testify that the cattle were in the highway at the time of the collision, the inferences that may logically be drawn from the facts and circumstances testified to by the other witnesses are sufficient to overcome the direct testimony, which, it is argued, is so inherently improbable that the jury were justified in rejecting it, and that the verdict should not be disturbed.

Circumstantial evidence may be received to establish a fact in contradiction to the positive testimony of alleged eye-witnesses to the transaction; but circumstantial evidence cannot be said to be sufficient to sustain a verdict depending solely thereon for support, unless the circum-

stances proved by the evidence are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom. *Asbach v. Chicago, B. & Q. R. Co.,* 74 Ia. 248; *Lopez v. Campbell,* 163 N. Y. 340; *American Freehold Land Mortgage Co. v. Whaley,* 63 Fed. 743.

The defendant's witnesses admit that one of its engines collided with the plaintiff's live stock. Does it reasonably appear by inference or otherwise that the collision occurred within the defendant's right of way and without the highway? The fact that no cattle tracks were found upon the railway grade between the points where the carcasses were found and the cattle-guards, and that such tracks were found upon the grade within the highway, tends strongly to discredit the inference that the cattle voluntarily crossed the guards. The fact that the tracks were noticed on the grade and within the highway refutes the argument that the ground was so hard and dry that cattle would make no impression by walking thereon. The suggestion that the cattle may have entered the right of way at another crossing some distance eastward seems improbable in the light of all of the evidence. There is no proof that the cattle-guards at that crossing were out of repair or insufficient; there is no evidence that cattle tracks were found upon the grade east of the point where the carcasses were found, nor is there any evidence that the cattle ascended the grade within the defendant's right of way, but outside of the highway. The fireman and the engineer are the only persons having absolute knowledge of the facts, and we detect nothing improbable in their statements. The momentum of the train moving at the rate of 15 or 18 miles an hour was such that the plaintiff's cattle were as mere straws in the path of the train, and the locomotive in three seconds of time moved the 50 or 70 feet intervening between the point of collision and the points where the cattle rolled down the grade. It seems to us that every fact testified to by the plaintiff's witnesses is consistent with the testimony of the fireman

and the engineer, so that upon a consideration of all of the evidence there is no substantial conflict therein. Unless the established facts from which the plaintiff deduces the fact that his cattle had crossed the guards before the collision cannot in reason be reconciled with the testimony of the engineer and that of the fireman, they do not contradict that testimony and will not sustain a verdict in the plaintiff's favor. As we have said, not only do those facts not contradict the direct testimony, but they are consistent therewith.

The defendant's motion at the close of the evidence for a directed verdict should have been sustained.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.