WALFORD ANDERSON, APPELLANT, V. ROBBINS INCUBATOR
COMPANY ET AL., APPELLEES.

8 N. W. (2d) 446

FILED MARCH 5, 1943.  No. 31529.

*Hoagland, Carr & Hoagland,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda* and *James T. Keefe, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced by Walford Anderson, plaintiff and appellant herein, in the district court for Lincoln county, against the Robbins Incubator Company, a corporation, and Dale Campbell, as defendants and appellees herein, to recover damages sustained by himself and to his car by reason of alleged negligence of the defendant Dale Campbell, while, as an employee of the defendant Robbins Incubator Company, he was driving one of their trucks. The answer of the defendants denied the allegations of negligence and alleged plaintiff was guilty of contributory negligence which, in his reply, the plaintiff denied. Upon trial to a jury and after the plaintiff had introduced his evidence and rested the defendants made a motion to dismiss which the lower court sustained and the plaintiff brings this action here to have a determination of the correctness of the ruling of the lower court on the motion.

In considering a motion to dismiss after the plaintiff has rested, which is in effect the same as a motion for a directed verdict, this court must, for the purpose of a decision thereon, treat it as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163.

Applying the foregoing rule to the evidence disclosed in the bill of exceptions and admitted by the pleadings, it appears the appellant was proceeding from Minden, Nebraska, to Buffalo, Wyoming, on the 12th day of February, 1941,

driving his 1933 Plymouth sedan and had attached thereto
a two-wheel trailer of a total length of about 12 feet, the
box part being about 8 feet long and 7 feet 4 inches wide
with a rack-type box thereon about 3 feet high with the
wheel base being the same as that of the car, and which was
attached to the center of the rear of the car leaving 3½ to
4 feet between the box of the trailer and the car itself.
This trailer was loaded with various pieces of machinery
and household goods and had some canvas thrown over the
top thereof. At Overton, Nebraska, he checked his tires
and gas and picked up a hitch hiker by the name of Ste-
vens, then proceeded west of Brady along highway No. 30
and after he had negotiated the turn west of Brady and
was traveling on a straight and level cement highway 20
feet in width and at a point about three-tenths mile west
of the west end of the curve he felt a shimmy in his car.
He then drove his car and trailer to the right onto the shoul-
der of the highway, which at this point was between 5 and
6 feet in width, dry, and in good condition, and left the left
trailer wheel somewhere from 18 to 30 inches on the paved
portion thereof. The time was about 10:30 p. m. and the
weather was cloudy, chilly, and a wind was blowing from
the northwest, but there was no snow or any other elements
in the air to affect the visibility. He turned his lights on
dim, had a tail-light burning on the rear of the car, had
new reflectors 3 inches in width on each of the rear up-
rights of the trailer facing back, and proceeded to place red
flags about 12 inches square and 18 inches in height at a
distance of 75 steps both east and west on the north edge
of the pavement. He then proceeded to change the flat tire
on the left rear trailer wheel by the light of his tail-light.
After he had his tire on the trailer and after a truck passed
going east, he got down under the trailer from the front to
release his jack and while in that position he noticed a light
coming from the east and almost immediately thereafter
the trailer was hit by the appellee's truck approaching from
the east and Stevens was killed and the appellant was in-
jured. The truck struck the left rear of the trailer with

the right front part of its sleeping compartment and the box in which it carried flares which were directly back of the cab.

The first question is, was there sufficient evidence produced on the part of appellant to establish negligence on the part of the appellees? This must be answered in the affirmative for, commencing with *Roth v. Blomquist,* 117 Neb. 444, 220 N. W. 572, and as late as *Fulcher v. Ike,* 142 Neb. 418, 6 N. W. (2d) 610, we have consistently held: "As a general rule it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps."

While the question of the lights of an approaching truck traveling east became part of the evidence of this case from a reasonable inference thereof, however, that fact would not make any change in this situation, for, on principle, the existence and presence of smoke, snow, fog, mist, blinding headlights, or other similar elements which materially impair or wholly destroy visibility, are not to be deemed intervening causes, but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances. *Anderson v. Byrd,* 133 Neb. 483, 275 N. W. 825; *Fischer v. Megan,* 138 Neb. 420, 293 N. W. 287.

The next question that presents itself on this appeal is, was the appellant, as a matter of law under the evidence adduced, guilty of negligence such as would defeat his right to recover under the comparative negligence statute? The appellees contend that because the appellant failed to comply with three separate statutes governing rules of the road on public highways the lower court was correct.

Section 39-11,112, Comp. St. Supp. 1941, provides in part as follows: "Motor buses, cars for hire having a capacity over seven passengers, cars or trucks used as wreckers or for towing purposes, motor trucks and combinations thereof operating on the highways during the period from one-

half hour after sunset to one-half hour before sunrise shall at all times be equipped with at least three portable flares which may be plainly visible for a distance of five hundred feet." The statute then describes when and under what conditions these flares are to be displayed and the manner of displaying them. In construing a statute the court should, if possible, discover from the language of the act the legislative intent and give effect thereto (*Hansen v. Dakota County*, 135 Neb. 582, 283 N. W. 217) ; and where, as in this statute, a penalty is provided for its violation it must be strictly construed and not be extended by implication (*Macomber v. State*, 137 Neb. 882, 291 N. W. 674) ; and "The subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will" (*Hansen v. Dakota County, supra*). Applying these elementary but cardinal principles to the above statute, it appears from the language used that the legislature intended, from the act as a whole, that certain classes of motor vehicles, when in use upon the public highways, be required to carry flares, and further provides when and how they shall use these flares and fixes a penalty, upon their conviction, for failing to do so. That the legislature did not intend to cover motor vehicles generally is self-evident from the specific description of certain classes described therein, and the question here is what class is described by the words "cars or trucks used as wreckers or for towing purposes." In their application to motor vehicles these descriptive words are commonly applied to cars or trucks constructed or adapted to be used by garages or others to assist in removing disabled or distressed motor vehicles from the public highways and not to all cars generally, such as the appellant's, that have trailers attached thereto or which may be temporarily used in assisting others. We find the legislature, in the passing of the act, intended these words to have this generally accepted meaning and to limit the requirements thereof to this class. The reason for this requirement applying to this limited class is likewise evi-

dent, for as they go out on the highways to assist in the removal of wrecked cars or to pull disabled cars they back around on the highways blocking them in part or altogether for some considerable period of time and it is only a reasonable precaution that the traveling public should have additional warning thereof. We therefore find that the appellant's car, with trailer attached, did not come under this classification and that statutory requirements were not applicable to him. Appellees have cited cases including *Monasmith v. Cosden Oil Co.*, 124 Neb. 327, 246 N. W. 623; *Giles v. Welsh*, 122 Neb. 164, 239 N. W. 813, in which we have held that leaving a truck on the highway without any flares or lights whatsoever was sufficient to permit recovery against the operator thereof for gross negligence. These cases are not applicable for the appellant herein was under no statutory duty to put out flares nor are the facts the same for in those cases the truck was left without any lights whatsoever while here the head and tail-lights were burning and reflectors were placed on the trailer.

Section 39-11,105, Comp. St. Supp. 1941, provides: "(a) Every motor vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise * * * shall display lighted lamps both front and rear. * * * (c) Whenever a motor vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the times mentioned in subdivisions (a) * * * such vehicle shall be equipped with one or more lamps which shall exhibit a white light on the roadway side visible from a distance of five hundred feet to the front of such vehicle and a red light visible from a distance of five hundred feet to the rear." It appears that appellant's car had lights on both front and rear which were left burning although none was on the rear of the trailer, and whether the rear light was obscured by the trailer is a question of fact for the jury and if violated is by the settled doctrine of the decisions of this court not negligence *per se* but evidence of negligence that may be taken into consideration with all other facts and circum-

stances in determining whether or not negligence is established thereby and whether or not it would defeat appellant's right to recover. *Gleason v. Baack,* 137 Neb. 272, 289 N. W. 349.

Section 39-1154, Comp. St. Supp. 1941, provides: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway." It appears from the evidence that the shoulder was from 5 to 6 feet wide on each side of the cement surfaced part of the highway and that plaintiff drove his car and trailer out on this shoulder until only a part of the car and trailer remained on the cement surface, and whether or not this was as far as he could drive off as a practicable matter is a question of fact for the jury and, if violated, is by the settled doctrine of the decision of this court not negligence *per se* but evidence of negligence that may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby and whether or not it would defeat appellant's right to recover.

Where the evidence is such that reasonable minds might draw different conclusions therefrom, the questions of negligence and contributory negligence are for the jury. Upon a consideration of all of the facts admitted by the motion to dismiss together with all reasonable inferences therefrom this case presents a factual situation upon which reasonable minds might draw different conclusions and, therefore, presents a jury question as to the appellees' negligence and the appellant's negligence under the comparative negligence statute and the appellees' motion to dismiss should have been overruled.

REVERSED.