**Dorothy A. GARDNER, Administratrix of the Estate of Dairl Dean Gardner, Deceased, Appellant,**

**v.**

**Richard L. MEYERS and Bill Anderson, Appellees.**

**No. 73-1323.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1973.

Decided Feb. 8, 1974.

Asa A. Christensen, Lincoln, Neb., for appellees.

J. Arthur Curtiss, Lincoln, Neb., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and STUART, District Judge.*

STUART, District Judge.

This is an appeal from a jury verdict which awarded plaintiff-appellant $107,500 from defendant Anderson, but nothing against defendant-appellee Meyers. Following the return of the verdict, plaintiff moved to set aside the verdict and judgment as against Meyers and for a new trial. The court, the Honorable Warren K. Urbom, denied the motions, and plaintiff appeals as against defendant Meyers only.

Plaintiff's decedent was killed outright when the car in which he was riding, being driven by defendant Meyers, hit the rear of a grain trailer owned by defendant Anderson that was parked on a country road near Bennet, Nebraska around midnight December 30, 1971. Decedent and Meyers, who was his cousin, had been visiting area taverns preceding the time of the accident, and had consumed some quantity of alcoholic beverage. Following the accident, a blood sample was removed from the decedent, and a blood-alcohol test was performed. No such test was performed on defendant Meyers, who was injured in the accident.

Plaintiff-appellant sets out six grounds for reversal in her appeal in this case. The six grounds are:

1. The issue of contributory negligence of the decedent was improperly submitted to the jury.

2. The issue of assumption of risk was improperly submitted to the jury.

3. The trial court erred in failing to give plaintiff-appellant's requested instruction concerning concurrent negligence.

4. The blood samples were taken from decedent without authority of law or permission, and were therefore inadmissible at trial. The subsequent admission of the tests was reversible error.

5. The trial court erred in allowing counsel for defendant Meyers to ask Meyers leading questions during direct examination.

6. The Nebraska "guest statute" is unconstitutional because it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

We reject these contentions and affirm the trial court.

I. Appellant alleged and sought to prove Meyers' intoxication and gross negligence to defeat the guest statute in order to recover from appellee. As the jury found against that proposition, appellant now claims the defenses of contributory negligence and assumption of the risk should not have been submitted to the jury as there was no proof of intoxication on the part of Meyers or that he was driving in a reckless manner, and thus decedent could neither have been contributorily negligent, or assumed any risk that was attendant to his

---

* W. C. STUART, District Judge, Southern District of Iowa, sitting by designation.

riding with Meyers. Plaintiff further claims that even if it were shown that defendant Meyers was intoxicated, there is no proof that the plaintiff's decedent knew it or should have known of it.

■ We are of the opinion that there was substantial evidence presented in the trial on which the trial judge could submit both the issue of contributory negligence and assumption of the risk to the jury. Raskey v. Hulewicz (1970), 185 Neb. 608, 177 N.W.2d 744; Kaufman v. Tripple (1966), 180 Neb. 593, 144 N.W.2d 201; Robins v. Sandoz (1964), 177 Neb. 894, 131 N.W.2d 648; Landrum v. Roddy (1943), 143 Neb. 934, 12 N.W.2d 82. No useful purpose would be served by reviewing the supporting evidence.

■ In any event any error would be without prejudice because the jury rejected defendant Anderson's defense of contributory negligence by returning a verdict for plaintiff against Anderson. As assumption of risk requires more than contributory negligence, knowledge as contrasted with "should have known," it is obvious that the verdict in favor of Meyers did not rest on either his defense of contributory negligence or assumption of risk.

We also reject appellant's reliance on Mittlieder v. Chicago and Northwestern Railway Company (CA8, 1969), 413 F. 2d 77. *Mittlieder* and this case are distinguishable on the facts.

In *Mittlieder* the record was not clear as to whether or not the deceased passenger saw the driver drinking, whether he showed the effects of drinking liquor or whether he had a chance to observe the actual intoxicated condition of the driver. In commenting on this issue in *Mittlieder,* Judge Bright noted at page 81:

* * * One can easily rationalize on the basis of the record in this case that Haney did or did not show the effects of the liquor he had drunk; that Ochsner did or did not see his driver drinking; that Ochsner did or did not have a reasonable opportunity to learn of his driver's actual intoxicated condition. Neither an affirmative conclusion attributing knowledge of the driver's acts to Ochsner nor a contrary conclusion has evidentiary support. * * *

The record before us is clear; leaving no doubt as to appellant's decedent's opportunities to observe the actions and conditions of his drinking partner. The two had been drinking together for some hours in several local taverns. The driver, Meyers, had been shut off from service from the bar at the last tavern the two visited prior to the accident. Obviously there is no possibility to determine what went on in the decedent's mind prior to the accident about Meyers' condition.

However, we need not establish such a subjective test in this case. All that is necessary is that we find that the record was substantial enough for the jury to infer that appellant's decedent did have the opportunity to observe Meyers drinking, that he could observe what effects the liquor had on him and that he had the opportunity to learn of his intoxicated state. We believe the record amply supports such a finding.

II. Appellant urges the trial court erred in giving the following instruction on concurrent negligence:

Instruction No. 18

Where the independent acts or omissions to act of two or more persons combine to proximately cause an injury indivisible in its nature, each such act or omission to act is itself a proximate or concurrent cause, *and any one or more of such persons may be held responsible* for the entire injury. This is true even though one may have been more negligent than the other.

He claims the italicized portion of the instruction was not applicable to this case because this action was against both parties claimed to be concurrently negligent and the court should have giv-

en his requested Instruction No. 8 which provided:

You are instructed that if you find from the preponderance of the evidence that the injuries and damages sustained by the plaintiff resulted from the concurrent negligence of the defendants, *you would be justified in finding against the defendants* for all the damages sustained notwithstanding you might believe that one of the defendants was more negligent than the other. * * *

Plaintiff states:

It can readily be seen that plaintiff's tendered instruction would require a jury to find against both defendants whereas the instruction given by the trial court allowed the jury to pick and choose as between the two defendants and to bring in a verdict against one or the other or both.

■ Plaintiff is in no position to complain because the court gave Instruction No. 18. It is identical to her requested Instruction No. 12.

■ Requested Instruction No. 8 could not have been given in addition to Instruction No. 18, because it is not entirely correct and would have been misleading to the jury. A party cannot claim error in the refusal to give a requested instruction which is not entirely correct, or which it is not possible to give without qualification, or which is so framed as to be capable of being misunderstood. Cherry v. Stedman (CA8, 1958), 259 F.2d 774, 777, 778; Baltimore & Ohio R. Co. v. Felgenhauer (CA 8, 1948), 168 F.2d 12, 18. Anderson's liability was based on negligence. Meyers' liability was based on gross negligence or negligence coupled with intoxication. The requested instruction does not recognize this distinction and could have been confusing to the jury and cause a decision based upon a misapprehension as to the law. In addition, it conflicts with Instruction No. 18 mentioned above.

■ Instructions must be considered as a whole and particular instructions, and requests for instructions, are to be taken in the framework of the entire charge. Marshall v. Ford Motor Co. (CA10, 1971), 446 F.2d 712, 715. In our opinion the instructions as a whole correctly stated the law of concurring negligence without including the substance of requested Instruction No. 8.

■ ·III. The fourth alleged error pertains to the blood sample taken from appellant's decedent. We do not believe that there was a physician-patient relationship present here. Such a relationship must arise knowingly. The fact appellant's decedent was dead before Dr. Shapiro removed the blood forecloses any possibility of the formation of such a relationship. There was no evidence that the relationship existed prior to that time. Assuming, arguendo, such a relationship had been in existence, the relationship would have ceased at the time of appellant's decedent's death. *See,* Travelers Insurance Co. v. Bergeron (CA8, 1928), 25 F.2d 680, cert. denied, 278 U.S. 638, 49 S.Ct. 33, 73 L.Ed. 553 (1928).

■ Dr. Shapiro was acting within the scope of his authority as coroner's physician when he removed the blood sample. He was summoned by the Lancaster County Sheriff's Office which requested that he perform the services of a coroner's physician. When he arrived at the hospital where the appellant's decedent had been taken, it was not known who had been the driver of the car. While that issue was resolved later, we are of the opinion that Dr. Shapiro acted properly and competently in drawing a blood sample for a blood-alcohol test under the circumstances. Appellant's claim that there was no "authority" for such examination is refuted by the Nebraska statute stating the scope of duty of a coroner's physician. Dr. Shapiro would not have carried out his statutory duties, in our opinion, had he not examined the deceased and drawn the blood sample.

The possibility that appellant's decedent might have been the driver of accident vehicle does much to persuade us of

the correctness of Dr. Shapiro's actions. Nebraska, as do many other states, has an implied consent law pertaining to operators of motor vehicles. Nebraska Revised Statutes § 39–727.03 (1972 Cumulative Supplement). In brief, the statute requires one who has been operating a motor vehicle to submit to a chemical test of his blood, breath or urine to determine alcoholic content of his body fluids at the direction of a police officer, etc. In addition under Nebraska Revised Statutes § 39–727.05, the consent of a person incapable of refusal is not withdrawn.

 There is no direct evidence that Deputy Coleman directed or authorized Dr. Shapiro to remove a blood sample from the deceased. We are convinced, however, that the jury could properly infer that confusion over the identity of the driver of the accident vehicle had been communicated to Dr. Shapiro after his arrival at the hospital. It is not necessary to have direct evidence of a request by the deputy sheriff to Dr. Shapiro, because such could be implied from the nature of the events as they transpired after the appellant's decedent had been brought to the hospital. In our opinion Dr. Shapiro was well within accepted standards in withdrawing the blood sample pursuant to the implied consent statute, § 39–727.03. The fact appellant's decedent obviously was incapable of consent or refusal was sufficient to trigger operation of § 39–727.05.

We hold that Dr. Shapiro was authorized to withdraw the blood sample from the deceased, and that permission or authority from the deceased's family or relatives was not needed.

 We now consider the admissibility of the blood test performed on the blood sample removed by Dr. Shapiro. The record indicates that the tests performed for blood-alcohol were done by a competent chemist, using accepted procedures and facilities. We are of the opinion, therefore, that Judge Urbom correctly admitted the blood test, which

showed .33 percent alcohol, as being material and relevant to this issue.

 Appellant's contention that the taking of the blood sample was in violation of the Fourth Amendment of the United States Constitution, forbidding unreasonable searches and seizures, is not a valid one. Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. We do not believe the drawing of the blood sample under the circumstances here violated the deceased's constitutional rights.

 Appellant's further assignment of error pertaining to the trial court's failure to sustain an objection to a hypothetical question asked Dr. Shapiro also lacks substance. The question sought the opinion of the witness as to the sobriety or intoxication at the last intake of alcohol of a man of the approximate age, size and weight of the deceased. We are satisfied from the record in the trial, that the facts contained within the question were in evidence and properly includable in the hypothetical. The fact that the question called for his condition "at the time of his last intake of liquor" is not fatal to the question. There was dispute as to the time at which the last drink was consumed. In any event it is only a relatively minor point which would not result in a material variance in Dr. Shapiro's calculations. Stated otherwise, a variation of even one hour, at the rate of metabolism calculated by Dr. Shapiro, would not have had a significant effect on the condition of appellant's decedent at the time of the accident.

 IV. The fifth issue appellant raises on appeal is that counsel for defendant Meyers' asked his client leading questions about 81 times. In particular, appellant cites as an example to the court to a question asked concerning Meyers' recollection of the drinking he and the appellant's decedent were doing. A review of the trial transcript reveals to the court that appellant failed to object at the time the question was asked

or move to strike after the answer was given. We find no reason to seriously consider appellant's contention at this level when she has failed to make record at the trial level. Such procedure cannot constitute plain error. The trial court has no obligation to stop leading questions if counsel makes no objection.

V. Appellant's final claimed error is that the Nebraska guest statute, § 39–740 of the Nebraska Revised Statutes, is unconstitutional. Briefly, appellant argues that because plaintiffs in guest passenger tort cases must prove gross negligence in order to establish liability, and plaintiffs in non-guest passenger tort cases need establish only ordinary negligence in order to recover, there is a denial of the Equal Protection provisions of the Fourteenth Amendment of the United States Constitution.

Many states in the United States presently have some form of the "guest statute." Appellant relies on a recent ruling in California to buttress her argument that the Nebraska statute is unconstitutional. In Brown v. Merlo (1973), 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212, the Supreme Court of California struck down that state's similar guest statute. This is the first instance of which we have knowledge that a guest statute has been held unconstitutional by an appellate court.

 This issue is one that was never raised at trial. Appellant argues that this should not deter us from deciding the question now, because the Brown decision was not handed down until the day the jury returned in the case below. This fact goes to the weight of the appellant's authorities, not as an excuse for not raising the issue below. Appellant was not restricted from arguing this point at trial, only in supporting her argument. It is a well-established rule in this circuit that defenses not raised or litigated in the trial court cannot be urged for the first time on appeal. White v. Chicago, Burlington & Quincy R. R. (CA8, 1969), 417 F.2d 941, 946. See also, Booth v. Seaboard Fire & Marine Ins. (CA8, 1970), 431 F.2d 212, 216.

For the reasons stated herein, the trial by jury in the court below is affirmed.